IN THE UNITED STATED DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | | |
|---|---|---|
| FIDELITY INVESTMENTS LIFE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | No.     09 C 2704 |
| | ) | |
| v. | ) | Judge Der-Yeghiayan |
| | ) | |
| DENISE SQUIRE, SHANA MAJMUDAR, | ) | Magistrate Judge Denlow |
| and JOE VACCARO | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MOTION FOR LEAVE TO INTERVENE</u>

Now come proposed intervenors, Donna FioRito, in her capacity as administrator of the

Estate of Justin Newman and in her individual capacity, and Frank Testa III, through their

counsel, Loevy & Loevy, and move pursuant to Federal Rule of Civil Procedure 24 to intervene

in this case.  In support, FioRito and Testa state as follows:

**Background**

This is a declaratory judgment action concerning Defendant Denise Squire's claim on the

life insurance policy that her deceased husband, Ari Squire, had with Plaintiff Fidelity

Investments Life Insurance Company ("FILI").  In this case, FILI asks the Court for a

declaration that it may conduct further investigation into Defendant Squire's claim on the policy.

FILI's request in this case has to do with the fact that Ari Squire murdered a young man

named Justin Newman approximately ten days before taking his own life.  Proposed intervenors

FioRito and Testa are Justin Newman's survivors (his mother and brother respectively).

Together they have brought a wrongful death lawsuit in state court against Denise Squire and the

Estate of Ari Squire, alleging that the Squires conspired to murder Mr. Newman for the purposes

of using his corpse to commit insurance fraud.  Their case concerns the bizarre and shocking

series of events leading up to Ari Squire's suicide, described in detail below.

### Allegations in FioRito and Testa's Wrongful Death Case

On February 23, 2008, Ari Squire murdered Justin Newman.  The murder took place in

the garage of Ari and Denise Squire's home in Lake Barrington, Illinois.  Although the exact

cause of Mr. Newman's death is unknown, Mr. Squire at some point crushed Mr. Newman's

body under a truck.  Prior to doing so, Mr. Squire swapped clothes, wallets, and shoes with Mr.

Newman, with Mr. Squire putting his clothing on Mr. Newman's body.  His purpose in doing so

was to stage the murder scene to make it appear that he (Ari Squire) had died.

Mr. Squire then lit the garage on fire and burned it.  He did so with the intention of

charring Mr. Newman's body beyond recognition so that it would be mistaken for Mr. Squire's

body when it was discovered underneath the truck.

After the murder, Ms. Squire, who was in the home at the time of the murder, called 911

to report the fire, and Mr. Squire fled to Missouri.  While in Missouri, Mr. Squire assumed Mr.

Newman's identity.  Mr. Squire used Mr. Newman's credit cards, drove around in Mr.

Newman's car, and otherwise pretended to be Mr. Newman in order to give the false impression

that Mr. Newman was alive and on the run.  In so doing, Mr. Squire utilized blue contact lenses

and brown hair coloring to match Mr. Newman's.

During the time period following Mr. Squire's purported death, Ms. Squire remained in

contact with him via e-mail, and possibly by cell phone as well.  The two exchanged e-mails, for

instance, about Mr. Squire's "funeral."  Mr. Squire asked Ms. Squire about how many people

showed up at his memorial service and "when are you planning on disbursing my ashes?"

Ms. Squire responded to the e-mails from her "dead" husband, establishing her knowledge of the illicit scheme. For instance, Ms. Squire told Mr. Squire that his body had not yet been released, and that she was "working on" a memorial party for him. When Mr. Squire asked Ms. Squire if she needed anything, she responded, "A new life."

For at least some period of time, the illicit plot succeeded. The authorities assumed that the dead body in the Squires' garage belonged to Mr. Squire, who was "identified" and pronounced dead on February 23, 2008. Ms. Squire even had a dinner in "celebration" of her husband's life on February 29, 2008 at Maggiano's restaurant in Skokie. The dinner was attended by about 120 people.

Meanwhile, FioRito and Testa reported Mr. Newman missing, and waited in vain for him to return home. As part of the conspiracy, Mr. Squire sent text messages from Mr. Newman's phone to Mr. Newman's mother in an attempt to give the false impression that Mr. Newman was alive but out of town for a week.

On March 2, 2008, Mr. Squire was in a motel room in Eureka, Missouri, rented under Mr. Newman's name, when several local police officers ran a license plate check on Mr. Newman's car and discovered that it had been reported missing. Those police officers proceeded to knock on Mr. Squire's motel room door. Fearing capture, Mr. Squire shot and killed himself with a .40 caliber gun.

Thereafter, the authorities have used DNA and fingerprint testing to identify the deceased person in the motel room as Mr. Squire, and the victim who had been killed and then burned in the Squires' garage as Mr. Newman.

3

At the time of Mr. Squire's suicide, there was a $5 million life insurance policy on his life issued by FILI, the policy that is the subject of this suit.  Ms. Squire is the 80% beneficiary of that policy.  The insurance policy had a two-year exclusion for suicide, a time period that had lapsed by the time of Mr. Squire's death.

Although it has been more than a year since Justin Newman's murder and at least one of the known murderers (Ari Squire) is dead, a criminal investigation is still ongoing.  Ms. Squire is a person of interest in that investigation.

As noted above, FioRito and Testa have filed a wrongful death case against Denise Squire and the Estate of Ari Squire.  *See* Exhibit A (Second Amended Complaint, *Estate of Newman et al., v. Squire et al.*, 08 L 676).  That case is currently pending in the Circuit Court for the Nineteenth Judicial Circuit, Illinois.

**Argument**

The Federal Rules of Civil Procedure allow a party to intervene in an action by two different means: by intervention as a matter of right and by permissive intervention.  Fed. R. Civ. P. 24(a)-(b).  FioRito and Testa should be allowed to intervene in this case by either of these means.

**I.      FioRito and Testa Are Entitled to Intervene as a Matter of Right Under FRCP 24(a) Because They Have An Interest in the Insurance Proceeds That Are the Subject Matter of this Action.**

Under the Federal Rule of Civil Procedure, anyone shall be permitted to intervene in an action "when the applicant claims an interest relating to the property or transaction which is the subject matter of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the

4

applicant's interest is adequately represented by existing parties."  Fed. R. Civ. P. 24(a)(2).  An

applicant for intervention under Rule 24(a) must demonstrate that each of four requirements is

met: (1) the application is timely; (2) the applicant has an interest in the property or transaction

which is the subject of the action; (3) disposition of the action as a practical matter may impede

or impair the applicant's ability to protect that interest; and (4) no existing party adequately

represents the applicant's interest.  *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d

1377, 1380-81 (7th Cir. 1995); *United States v. City of Chicago*, 798 F.2d 969, 972 (7th Cir.

1986).

FioRito and Testa meet each of these four requirements.  First, their application is timely;

only one of the three defendants in this case has answered the complaint, and she did so only two

days ago.  No party can claim to be prejudiced by the timing of this motion for intervention.

Second, FioRito and Testa have an interest in the property that is the subject of this

litigation:  the proceeds on Ari Squire's life insurance policy with FILI.  Although the "interest"

required by Rule 24(a)(2) has never been defined with particular precision, the Seventh Circuit

has stated that a would-be intervenor must have a "direct, significant, legally protectable"

interest, an interest that is something more than a mere "betting" interest but less than a property

right.  *Security Ins. Co.*, 69 F.3d at 1380-81.  Whether an applicant has an interest sufficient to

warrant intervention as a matter of right is a highly fact-specific determination, making

comparison to other cases of limited value.  *Id.*   FioRito and Testa's interest in the insurance

proceeds is sufficiently direct to pass this test.  Their wrongful death case against Ms. Squire

seeks damages in excess of $5 million.  Based on representations made by Ms. Squire and her

counsel in the wrongful death matter, she is unable to satisfy a judgment in this amount without

the $4 million in life insurance proceeds she is claiming.  Their wrongful death case is well into

the discovery phase, and they have already survived a motion for summary judgment.  Thus,

their interest in all of Ms. Squire's assets (including the proceeds of the policy at issue here) are

much more than a mere "betting" interest and sufficiently significant for Rule 24(a) purposes.

Third, disposition of this action as a practical matter may impede or impair FioRito and

Testa's ability to protect that interest.   If FILI prevails in this action, Ms. Squire will not have

sufficient assets to satisfy the judgment that may be entered against her in FioRito and Tetsa's

wrongful death case.

Fourth, there is no existing party in this case that can adequately represent FioRito and

Testa's interests.  Apparently, FILI wants this Court to determine that Ms. Squire is liable for

Justin Newman's death and that she is therefore disqualified from collecting on the policy under

755 ILCS 5/2-6 (the Illinois "person causing death" statute).  Presumably, Ms. Squire will want

this Court to determine that she is not liable for Mr. Newman's death and that she is eligible to

collect benefit on the policy.  FioRito and Testa have a totally different position: they want this

Court to determine Ms. Squire is liable for Mr. Newman's death but that she is eligible to collect

on the policy anyway.   There is no party that can adequately represent their interests.

It might appear that Ms. Squire could represent FioRito and Testa's interests because all

three persons want this Court to find that Ms. Squire is eligible to collect on the policy.   FioRito

and Testa, however, cannot truly rely on Ms. Squire to protect their interests, as their broader

interests are worlds apart from hers.  FioRito and Testa intend to prove at trial in their wrongful

death case that Ms. Squire conspired with her husband to use Justin Newman's corpse to feign

Ari Squire's death for the purposes of committing insurance fraud.  If they prevail in their

wrongful death case (or as their case gets stronger and Ms. Squire anticipates entry of judgment against her), Ms. Squire will have no incentive to litigate against FILI in this case; any proceeds she collects will go directly to FioRito and Testa. Indeed, once a judgment is entered against her, she might even prefer to have the proceeds go to one of the other beneficiaries, Shana Majmudar or Joe Vacarro, who, on information and belief, are individuals with whom she has personal relationships.

The only way for FioRito and Testa to protect their interest in the proceeds on Mr. Squire's life insurance policy is if they are allowed to intervene and participate in litigation of this action. Accordingly, they are entitled to intervene as a matter of right.

## II. Alternatively, FioRito and Testa Should Be Allowed to Intervene Under FRCP 24(b) Because Their Wrongful Death Case Shares Questions of Law and Fact With This Case.

Even if the Court finds that FioRito and Testa do not meet the Rule 24(a) standard for intervention as a matter of right, they nevertheless should be allowed to intervene under Rule 24(b). According to Rule 24(b), the Court may permit a party to intervene who has a claim or defense that shares with the main action a common question of law or fact.

There can be no dispute that FioRito and Testa have a claim that shares common questions of law and fact with this action. FILI's entire case hinges on allegations that FioRito and Testa are making against Ms. Squire. *See* FILI's Complaint (Document 1) at ¶¶ 15-18 (extensively citing FioRito and Testa's wrongful death suit). Part of the relief they seek from this Court is a judgment declaring that FILI may continue to investigate Ms. Squire's claim while FioRito and Testa's wrongful death case remains active and pending. *Id.* at ¶ 28(b)(2).

FILI is also asking the Court for a declaration that Ms. Squire is disqualified from collecting benefits pursuant to 755 ILCS 5/2-6 (the Illinois "Person Causing Death" statute).  In order to determine if Ms. Squire is disqualified under this statute, the Court must first determine whether Ms. Squire had any role in causing any person's death.  This determination will require discovery that is almost entirely coextensive with the discovery already taking place in FioRito and Testa's wrongful death case.

FILI's declaratory judgment case deals with the very same issues FioRito and Testa are litigating in their wrongful death case against Ms. Squire.  The Court should therefore allow FioRito and Testa leave to intervene in this matter

WHEREFORE, Donna FioRito and Frank Testa III respectfully request that this Court grant them leave to intervene in this matter and any other relief that it deems just an appropriate.

RESPECTFULLY SUBMITTED:


  /s/ Elizabeth Mazur
Attorneys for Proposed Intervenors


Arthur Loevy
Jon Loevy
Mike Kanovitz
Elizabeth Mazur
LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900

## <u>CERTIFICATE OF SERVICE</u>

I, Elizabeth Mazur, an attorney, certify that on May 29, 2009, I served this document on all counsel of record via the ECF system.

   /s/ Elizabeth Mazur       
