IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FIDELITY INVESTMENTS LIFE INSURANCE COMPANY, | ) Case No. 1:09-cv-02704 ) |
| Plaintiff, | ) Judge Der-Yeghiayan ) ) Magistrate Judge Denlow |
| v. | ) ) |
| DENISE SQUIRE, et al., | ) ) |
| Defendants. | ) ) |

## PLAINTIFF FILI'S POSITION STATEMENT AS REQUESTED BY COURT ON MAY 12, 2010 ADDRESSING RIPENESS AND LEGAL ISSUES IN DISPUTE

Plaintiff FIDELITY INVESTMENTS LIFE INSURANCE COMPANY ("FILI"), by and through its undersigned attorneys, respectfully submits this Position Statement pursuant to the Court's May 12, 2010 order, as follows:

**I.    BACKGROUND FACTS**

The Court is familiar with the dispute and the parties herein. FILI initiated this lawsuit in May 2009 seeking the Court's guidance in resolving the disputed competing and conflicting claims to benefits under the $5 million life insurance policy it issued to Ari Squire (the "Policy"). Through a December 2006 endorsement to the Policy, Ari Squire designated Denise Squire, Ari's wife, as a primary beneficiary as to 80% of the Policy proceeds and Joe Vaccaro ("Vaccaro"), Ari's longtime friend and business associate, the primary beneficiary as to the remaining 20% of Policy benefits. The December 2006 endorsement also named Ari's sister, Shana Majmudar ("Majmudar"), the secondary beneficiary as to 100% of the Policy benefits, meaning that to the

extent any primary beneficiary is disqualified, Majmudar would be entitled to recover under the Policy.

The competing and conflicting claims under the Policy arise out of a troubling set of facts that resulted in a police investigation and three separate, but virtually identical civil litigations filed by the Estate of Justin Newman (the "Newmans") against each beneficiary. The three litigations allege that each beneficiary participated in a conspiracy with Ari Squire to feign Ari's death by murdering Justin Newman for purposes of recovering under the Policy. The Newmans filed the first such suit in Lake County, Illinois, against Denise Squire, which resulted in a jury verdict entered on February 26, 2010 finding Denise Squire liable in the insurance fraud-murder conspiracy and awarding $6 million in damages. The Newmans settled with Denise Squire under which the Newmans purportedly received an assignment of Denise Squire's benefits (if any) under the Policy. On February 22, 2010, the Newmans filed the second wrongful death suit, this time against Vaccaro. This action is pending in this Court before Judge Kocoras under Docket No. 1:10-cv-01167, *Estate of Justin M. Newman, et al. v. Joseph Vaccaro*. Counsel for the Newmans advised this Court at the May 12, 2010 hearing that a settlement agreement was reached resolving the litigation with Vaccaro, although the parties continue to work on the settlement documentation. Lastly, the Newmans filed a third wrongful death suit against Majmudar on April 27, 2010, in Lake County, Illinois, Docket No. 10 L 403.[1]

All three beneficiaries have asserted their respective, but inconsistent rights to recover under the Policy. Additionally, the Newmans have asserted that they have standing because Denise Squire assigned her rights under the Policy in settlement of the $6 million Lake County

---

[1] In addition to the three underlying wrongful death litigations, the dispute has spawned three separate coverage actions. In addition to the present matter filed by FILI (1:09-cv-02704), Squire (Docket No. 1:09-cv-07469), and Vaccaro (Docket No. 1:10-cv-01058, dismissed without prejudice on May 19, 2010) separately filed suit against FILI demanding payment of benefits under the Policy.

verdict. On March 25, 2010 this Court granted FILI's motion to reinstate this case and on April 19, 2010, with this Court's permission, FILI filed its First Amended Complaint seeking declaratory judgment to ask the Court to resolve the competing and inconsistent claims. Additionally, the evidence uncovered during the course of the investigation implies that Squire purchased the Policy and/or made the December 2006 beneficiary change with the intent to defraud. Accordingly, FILI's declaratory judgment action asks the court to also determine whether Squire purchased the Policy or made the December 2006 beneficiary change with the intent to defraud.

## II. POSITION STATEMENT

### A. "Ripeness"

The Court has asked for the parties' respective positions as to whether FILI's declaratory judgment action is ripe. Four significant issues which FILI has asked this Court to resolve are ripe for litigation now:

(1) Whether the verdict finding Denise Squire caused the death of Justin Newman disqualifies her under the Policy;

(2) Whether Vaccaro is disqualified under the Policy due to his alleged involvement in the conspiracy which he has apparently settled;

(3) Whether Ari Squire's conduct in procuring the Policy and/or in filing the change in beneficiary endorsement on December 20, 2006 constitute a fraud which voids the Policy or the endorsement; and,

(4) Whether the Illinois Slayer Statute would permit the Newmans to recover any proceeds under these unusual murder-fraud-suicide facts.

These issues are ripe for the court's consideration now as the only conduct relevant to resolve them is that of Denise Squire, Vaccaro and Ari Squire, the policyholder. The claims filed by the Newmans against Majmudar have no impact on the disqualification and voidability issues. Moreover, Ms. Majumudar's rights, if any, to the Policy proceeds, can be discovered and

adjudicated in this proceeding. FILI takes no position on these issues. As it has offered since first filing this matter a year ago, FILI faces inconsistent claims to a single Policy and it is FILI's sole position that those claims can be resolved by this Court at this time.

FILI also asserts that the declaratory action is ripe as to each potential beneficiary under the Policy. As to Denise Squire, any lack of ripeness was cured through the resolution of the underlying action which resulted in a $6 million verdict against Denise Squire. This was the basis for FILI's motion to reinstate the case, which the Court granted on March 25, 2010. (See, Doc. #73, Order of March 25). Vaccaro, who apparently has settled with the Newmans to resolve the litigation against him, is situated similarly to Denise Squire such that his resolution of the underlying litigation cures any potential lack of ripeness that may have existed. As such, the dispute over Vaccaro's disqualification is ripe.

As to Majmudar, although the Newmans' suit against her remains pending, the resolution as to the disqualification of either Denise Squire or Vaccaro necessarily will implicate a determination of her rights under the Policy — put another way, a finding that Denise Squire or Vaccaro is entitled to recover[2] necessarily extinguishes Majmudar's claim under the Policy.

### B. Legal Issues To Be Addressed In The Litigation

The Court also requested the parties to identify the legal issues which are ripe for adjudication by the Court. As set forth below, FILI asserts that the potential disqualification under the Illinois "Person Causing Death" statute and the voidance of the Policy or the beneficiary change endorsement are presently ripe for consideration.

---

[2] Any finding of liability as to Majmudar could disqualify her as well.

1. **Disqualification Under The Illinois "Person Causing Death" Statute And Public Policy**

The Illinois "Person Causing Death" statute (also referred to as the "slayer statute") prohibits anyone involved in the conspiracy from collecting under the Policy. This statute prohibits any individual who "intentionally and unjustifiably causes the death of another" from collecting any "property, benefit, or other interest" as a consequence of the death. 755 ILCS 5/2-6 (2010). The Policy qualifies as a "property, benefit, or other interest" for purposes of the statute. *State Farm Life Ins. Co. v. Davidson*, 495 N.E.2d 520 (Ill. 1986); *see also Eskridge v. Farmers New World Life Ins. Co.*, 621 N.E.2d 164, 169 (Ill. App. 1993); *Prudential Ins. Co. of America v. Athmer*, 178 F.3d 473, 478 (7th Cir. 1999).

The language of the slayer statute broadly precludes any participant in the conspiracy from recovering under the Policy. S*ee, In Re Estate of Vallerius*, 629 N.E.2d 1185, 1188-9 (Ill. App. 1994) ("[T]he legislature certainly cannot be expected to prophesy and list in advance the infinite ways in which a statute such as this may need to be applied in the future."). In *Vallerius*, Doug White and Craig White were involved in the murder of their grandmother Adella Vallerius. Two months after killing the grandmother, their mother died leaving Doug and Craig as the only living heirs to the grandmother and their mother. Doug was convicted of killing his grandmother while Craig entered a guilty plea and was convicted of killing the grandmother's friend — Craig was not convicted of killing his grandmother. The court was faced with the issue of whether Craig was precluded from recovering as an heir even though he did not "swing the sledgehammer" that killed the grandmother, but only killed the friend after Doug killed the grandmother. The Illinois Appellate Court affirmed disqualification and found:

> The plain words of the statute compel us to hold that Craig White cannot be permitted to receive any benefit by reason of the death of Mrs. Vallerius, whether through her estate directly or indirectly through the estate of her daughter, Renie White. If we were to allow Craig

- 5 -

> White to receive any property, benefit, or interest from the estate of Renie White, our decision would directly contravene the statute's unambiguous mandate that he not receive any property by reason of his grandmother's death in any capacity or by any circumstance, because Craig White is one who caused the death of Mrs. Vallerius.

*Id.* The court noted that the term "causes" as used in 5/2-6 encompassed the "actions of one participating in the intentional and unjustifiable death of another, whether an aider and abettor, a coconspirator, or one who hires another to kill the decedent." The court also noted that a conviction for murder is not necessary for the public policy against wrongdoers profiting from their wrongful deeds to apply. Craig White was consequently precluded from recovering through his mother even though he did not kill his mother or his grandmother. Also, the reasoning of the court is based on broad principles of public policy that wrongdoers not benefit from their wrongful conduct. The *Vallerius* case supports a very broad and practical reading of the statute and the disqualification of any beneficiary who took part in the conspiracy.

Illinois public policy can also independently support disqualification under a life insurance policy if the circumstances warrant. When presented with cases that are not directly addressed by the slayer statute, the courts have looked to public policy. *See In Re Estate of Mueller*, 655 N.E.2d 1040, 1046 (Ill. App. 1995); *see also Vallerius*, 259 N.E.2d at 1188-9 (Ill. App. 1994). Illinois public policy seeks to prevent criminals from profiting off their intentional and unjustifiable crimes. *Davidson*, 495 N.E.2d at 521 (Ill. 1986). In the present case, this Court may conclude that Denise Squire and Vaccaro should not be allowed to collect on the Policy merely because the murderous and fraudulent plan to fake Ari Squire's death ultimately became a reality when her husband committed suicide.[3]

---

[3] This Court could conclude that the jury verdict against Denise Squire precludes her from disputing her involvement in the murder-for-insurance conspiracy. *See, State Farm Fire & Cas. Co. v. John J. Rickhoff Sheet Metal Co.,* 394 Ill. App. 3d 548, 914 N.E.2d 577 (1st App. 2009) (under Illinois law, collateral estoppel bars relitigation of a fact or issue in a subsequent suit); *Nowak v. St. Rita High School,* 197 Ill.2d 381, 389-90, 757 N.E.2d 471 (2001).

## 2. Voidance Of The Policy Or The Endorsement

This Court may also conclude that Illinois law supports voiding the Policy in its entirety or the voidance of the December 2006 beneficiary change endorsement to the extent this Court concludes the evidence show that either was part of Ari Squire's murder-for-insurance fraud scheme. Under black letter Illinois law, where a life insurance policy is obtained with an intent to commit fraud, the policy is void. *Federal Kemper Life Assurance Co. v. Eichwedel,* 266 Ill. App. 3d 88, 639 N.E.2d 246 (1st Dist. 1994). An insurance policy is void even if a misrepresentation is made in the application for insurance with the intent to deceive or the misrepresentations made materially affect the risk of the insurer. *Id*; 215 ILCS 5/154 (providing for the rescission of policies based on misrepresentations). Illinois courts have determined that the failure to disclose an intention to commit fraud at the time the policy is procured "would certainly be an untruth which would affect the risk assumed by the insurance company issuing a life insurance policy." *Eichwedel*, 266 Ill. App. 3d at 95 (voiding insurance policy procured as part of "murder-for-insurance" scheme). A life insurance policy procured with the intent to commit fraud is void from inception. *Id.*

Here, although discovery is required into Ari and Denise Squire's conduct, the factual allegations in the underlying litigation against Denise Squire could support this Court finding that Ari Squire procured the Policy or designated beneficiaries as part of his murder-for-insurance scheme thereby voiding either the Policy or the beneficiary change endorsement. FILI included several facts in Count V of FILI's First Amended Complaint which support that the issue of whether the Policy is voided by that conduct is ripe for this Court's consideration now. For example, the Newmans alleged in their litigation against Denise Squire that Ari Squire's plot existed by at least January 18, 2006, several months before Ari Squire submitted the December 20, 2006 beneficiary change form. (See, Doc. No. 77 at ¶ 62). There are additional allegations by the

Newmans that Ari and Denise Squire's financial and legal troubles go further back and included allegations of Medicare fraud, which also subjected the couple to significant legal fees. (*Id* at ¶ 64). The Newmans alleged that at the time of Justin Newman's murder, Ari and Denise Squire were "facing debts in excess of $2 million…" (*See*, Doc. No. 77 at ¶ 65). These facts call into question the policy's validity ab initio and the application of Illinois public policy and the slayer statute.

The Newmans' allegations require discovery into whether at the time he procured the Policy, Ari Squire intended to defraud FILI by conspiring with others, including Denise Squire and Vaccaro, to feign his death. Additionally, the Newmans' allegations that Ari Squire intended to defraud FILI by at least January 2006, and the documents supporting those allegations as referenced in FILI's Amended Complaint, could support this Court finding that at the time Ari Squire changed the beneficiaries under the Policy, he intended to defraud FILI by conspiring with others, including Denise Squire and Vaccaro, to feign his death for purposes of recovering $5 million under the Policy.

All of the above issues are ripe for consideration now and do not require the resolution of the Newmans' litigation against Majmudar. In fact, resolving these issues now may moot that litigation and provide for a more efficient use of judicial resources.

### 3. If Policy Is Not Void And Benefits Awarded, Amount of Interest and Off-Sets

As the Court has previously observed, throughout this litigation, FILI has acted reasonably and has been diligent in seeking the Court's assistance in resolving the conflicting and competing claims under the Policy. Nonetheless, FILI has been subjected to vexatious claims of bad faith, unreasonable delay, Rule 11 sanctions, and demands for awards of attorneys' fees and interest in

multiple jurisdictions. FILI disputes such allegations and reserves the right to directly refute such claims.

As to claims of interest, if this Court concludes that the Policy and beneficiary designation are not voided and determines that policy proceeds should be paid out and determines who is entitled to what portion of the Policy proceeds, the Court will have to determine what, if any, interest has accrued. Relevant to this issue is the fact that FILI filed a declaratory judgment action asking for judicial assistance on who if anyone should receive any benefits under the Policy, and this Court dismissed such action as premature in October 2009. (*See*, Doc. #67, Court Order of October 14, 2009). Once a jury verdict was rendered on February 25, 2010 against Denise Squire on the murder-fraud-conspiracy wrongful death case, FILI reinstated its action and amended its complaint raising the issue of whether the evidence presented in the wrongful death case suggests Ari Squire purchased the Policy or made the 2006 beneficiary designation with the intent to defraud, thereby voiding either the Policy or the beneficiary endorsement *ab initio* under either Illinois public policy or the Illinois Slayer Statute.

Under 215 ILCS 5/224 and cases interpreting it, interest is not due on the payment of life insurance proceeds until it is determined the proceeds are owed in the first instance. If this Court determines the Policies are not voided and benefits are owed, any interest should be determined as of the date of the Court's decision. Furthermore, any interest awarded should be offset against the attorney's fees FILI has incurred to defend itself against vexatious lawsuits in multiple jurisdictions by Denise Squire and Joseph Vaccaro demanding immediate payment of benefits in spite of ongoing criminal investigations and wrongful death lawsuits pending against both of them. *See, Aaron v. Mahl,* 550 F.3d 659 (7th Cir. 2008) (affirming award of attorneys fees and costs to disinterested stakeholder whose efforts were not part of its normal course of business

where the case was complex and involved extensive discovery and motions practice, and company did nothing improper to prolong the proceedings). The apparent murder-fraud-suicide-conspiracy facts involved in this benefits dispute are anything but typical and are not caused by FILI but the result of the actions of the insured, the primary beneficiary and perhaps others. For this reason, *if* the Court decides any benefits are owed, FILI will ask the Court to (1) assess interest as of the date of the Court's decision that the Policy is not voided and benefits are owed; and (2) offset from the total award or interest calculation the attorneys fees FILI was forced to incur in defending these multiple vexatious litigations filed by Denise Squire and Joseph Vaccaro.

### III. CONCLUSION

As set forth above, the issue of whether Denise Squire and Vaccaro are disqualified from collecting the insurance benefits is ripe for adjudication now and is required so that FILI can avoid paying multiple and inconsistent claims on the policy. The resolution of the respective underlying litigation pending against them resolved any question about ripeness. Additionally, the resolution of this disqualification issue necessarily implicates Majmudar's assertion of rights under the Policy as a finding that the primary beneficiaries are not disqualified necessarily defeats her claim under the Policy. The dispute with Majmudar is consequently ripe as well. Further, FILI submits that the issues of potential disqualification and the voidance of the Policy or the beneficiary change form are legal issues which are ripe for this Court's consideration.

Date: May 26, 2010							LOCKE LORD BISSELL & LIDDELL LLP


								By   /s/ Jennifer A. Kenedy
								    Attorneys For Plaintiff,
								    FIDELITY INVESTMENTS LIFE
								    INSURANCE COMPANY

Jennifer A. Kenedy
Mark A. Deptula
LOCKE LORD BISSELL & LIDDELL LLP
111 South Wacker Drive
Chicago, IL  60606
312-443-0700

- 12 -

**Certificate Of Service**

      I, Mark A. Deptula, an attorney, certify that on May 26, 2010, I caused a true and correct copy of FIDELITY INVESTMENTS LIFE INSURANCE COMPANY'S Position Statement to be served on All Counsel of Record via the ECF system, except service on Michael R. Graf, Michael R. Graf PC, 750 West Northwest Highway, Arlington Heights, IL 60004 was made via U.S. Mail.

          /s/ Mark A. Deptula