**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FIDELITY INVESTMENTS LIFE INSURANCE COMPANY | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | No. 09 cv 02704 |
| DENISE SQUIRE, THE ESTATE OF JUSTIN M. NEWMAN, by and through his mother, DONNA FIORITO, on her own behalf and as administrator of his estate, FRANK TESTA, III, SHANA MAJMUDAR, and JOE VACCARO | ) ) ) ) ) ) | Judge Der-Yeghiayan |
| Defendants. | ) ) | |

**DEFENDANT SHANA MAJMUDAR'S MEMORANDUM
IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Fidelity Investments Life Insurance Company ("FILI") filed a First Amended Complaint ("Complaint") seeking, among other things, declaratory relief regarding its obligation to pay $5 million in insurance benefits pursuant to its life insurance policy no. TL000-5560 (the "Policy"), which insured the life of Ari Squire, now deceased ("Ari"). Defendant Shana Majmudar, the contingent beneficiary of the Policy, filed a counter-claim against FILI, alleging breach of contract based on FILI's refusal to pay her benefits under the Policy. Ms. Majmudar now moves for summary judgment as to Count III of FILI's Complaint and as to Count I of her counterclaim with regard to her status as contingent beneficiary of Denise Squire, the primary beneficiary for $4 million of the $5 million Policy.

At this point in these proceedings, the only other parties that claims a right to the Policy proceeds is the Estate of Justin Newman and Frank Testa, III (the "Newman Parties"), who claim to have received an assignment of policy benefits from primary beneficiaries Denise Squire ("Denise") and Joe Vaccaro ("Vaccaro"). As set forth in detail below, Ms. Majmudar's Motion for Summary Judgment should be granted.

## SUMMARY OF ARGUMENT

**A.      The Newman Parties Have Admitted that Denise Is Disqualified as a Beneficiary under the Policy.**

In their first filed Motion to Intervene on May 29, 2009, the Newman Parties stated:

> "[the Newman Parties] intend to prove at trial in their wrongful death case that [Denise] conspired with her husband to use [Newman's] corpse to feign [Ari's] death for the purpose of committing insurance fraud."

(Dkt. No. 10)   The Newman Parties then discussed  755 ILCS 5/2-6 (West 2010) (the "Slayer Statute"): "[i]n order to determine if [Denise] is disqualified under the [Slayer Statute], the Court must first determine whether [Denise] had any role in causing *any* person's death." (Dkt. No. 10)(emphasis supplied).   "This determination will require discovery that is almost entirely extensive with the discovery already taking place in . . . [the] wrongful death case." (Dkt. No. 10). "FILI's declaratory judgment case deals with the very same issues [the Newman Parties] are litigating in their wrongful death case against Ms. Squire." (*Id.*). In other words, the Newman Parties have recognized from the outset that the effect of the Slayer Statute is not limited to individuals who kill the beneficiary of an insurance policy, but includes individuals such as defendant Denise, who participate in a scheme to fraudulently collect insurance benefits that intentionally causes an individual's death. 755 ILCS 5/2-6 (West 2010). This is the same position that the insurer FILI has taken. *See* Complaint (Dkt. 77) Count I, ¶¶39-41.

2

There is no dispute that "the Newman litigation proceeded to trial and, on February 25, 2010, a jury rendered a verdict against [Denise] Squire and awarded damages of $6 million in favor of Fiorito and Testa based on [Denise] Squire's involvement in the conspiracy." (Mem. Opinion, Dkt. 123). The Newman Parties now claim to have settled their judgment against Denise, by allegedly taking an assignment of her rights under the Policy. They now stand in her shoes – they have exactly the same rights and burdens that Denise has, no more, no less. Thus, if Denise is disqualified as a beneficiary, the Newman Parties are disqualified, and Ms. Majmudar, as contingent beneficiary, is entitled to the $4 million in Policy proceeds for which Denise is the primary beneficiary.

**B.      Denise Participated in a Conspiracy to Defraud FILI That Involved the Murder of Justin Newman**

In February 2010, a Lake County jury found that Denise participated in a conspiracy to commit insurance fraud by killing Justin Newman. Perhaps understandably, the Newman Parties now go to great lengths to distance themselves from the position they took during the Lake County, Illinois civil conspiracy trial against Denise and the Estate of Ari Squire, as well as statements they made to this Court in their Motion to Intervene. At the Lake County trial, the Newman Parties alleged, argued and proved by clear and convincing evidence that Denise Squire participated in a conspiracy with her late husband to fake Ari Squire's death for the purpose of defrauding FILI – a conspiracy that required them to kill Justin Newman and burn his body. The jury of necessity found that Denise agreed with her late husband Ari to participate in the vile scheme, the grisly purpose of which required Mr. Newman's corpse to be charred beyond recognition:

> The Plaintiffs have the burden of proving each of the following propositions by clear and convincing evidence:

3

First, that there was an agreement between Defendant Denise Squire and Ari Squire;

Second, that the agreement was to participate in an unlawful act;

*Third, that Justin Newman's death was caused by an unlawful overt act performed by one or more of the parties to the agreement; and*

Fourth, that Denise Squire performed an overt act in furtherance of the agreement.

If you find from your consideration of all the evidence that each of that each of these propositions has been proved, then your verdict should be for the Plaintiffs. On the other hand, if you find from your consideration of all the evidence that any of these propositions has not been proved, then your verdict should be for the Defendant. (emphasis supplied)

The Newman Parties now attempt to avoid the consequence of this jury instruction and their prior statements to this Court by asserting that there is "no evidence anywhere that Ms. Squire and/or Mr. Vacarro intentionally caused Justin's death." (Newman Position Paper, Dkt. No. 99 at 5). As discussed below, the evidence shows exactly the opposite.

### C. Denise Has Forfeited Her Right to Benefit from the Policy and Newman Parties Stand in Her Shoes.

In fact, the Newman Parties were correct in their original Petition to Intervene. Denise has forfeited her right to any benefit under the Policy. This position logically follows and is soundly based on the Lake County verdict whereby the jury found that Denise participated in a conspiracy to fake Ari Squire's death for the purpose of committing insurance fraud, the inevitable consequence of which was the murder of Justin Newman. And as assignees of Denise Squire, the Newman Parties have no greater rights that she.

The Newman Parties' new-found position assumes that this Court will ignore Denise's failed attempt to fraudulently collect the proceeds and her participation in a conspiracy that caused the intentional murder of Justin Newman and the death of the insured, her late husband, Ari. Undeniably, the Newman Parties are victims of Denise and Ari's actions. However, the

4

law, the facts and public policy disqualify Denise, and hence the Newman Parties, from obtaining the Policy proceeds, even while one sympathizes with their loss. A contrary result would allow Denise to accomplish the same goal as the failed conspiracy she and her late husband almost pulled off, regardless of whether Denise, the Newman Parties or both ultimately receive the Policy proceeds.[1] Instead, Ms. Majmudar, the secondary beneficiary under the Policy, should be declared the proper recipient of Policy's benefits that were to go to Denise, and awarded those $4 million in proceeds.

## FACTUAL BACKGROUND[2]

Ari Squire ("Ari") and his wife, Denise, conspired to fraudulently obtain $4 million in benefits under the Policy. (Local Rule 56.1 Statement of Undisputed Facts ("L.R.") ¶¶ 16-18). The Policy provided term life insurance coverage to Ari Squire with a "Face Amount" of $5 million. (L.R. ¶¶ 10, 11). Denise was designated a "Primary Beneficiary" under the Policy for 80% of the Face Amount or $4 million, and Shana Majmudar, Ari's sister was the contingent beneficiary. (L.R. ¶ 12).[3]

In order to fraudulently obtain the $4 million in proceeds, Ari and Denise schemed to fake Ari's death. (L.R. ¶¶ 16, 20). In connection with the scheme, Denise inquired of financial advisors as to how to invest and/or hide the $4 million life insurance benefits, she and Ari planned to obtain. (L.R. ¶¶ 35-37). For instance, Denise contacted a financial advisor named Jim Murphy. Denise had not been in contact with Mr. Murphy for years, but in February 2008, she called Mr. Murphy, and told him that she was "expecting to come into some money, and I

---

[1]     According to the Newman Parties' Summary Judgment Motion, Denise, who participated in the conspiracy to fraudulently obtain the FILI policy proceeds that necessarily resulted in Justin Newman's murder, would receive $520,000 as a result of her heinous actions.

[2]     References are to Ms. Majmudar's Local Rule 56.1 Statement of Uncontested Facts.

[3]     Joseph Vaccaro was also designated a "Primary Beneficiary" for 20% of the Face Amount or $1 million. (L.R. ¶ 11). The Newman Parties filed a Complaint against Vaccaro alleging he also was part of the conspiracy to defraud the insurance company. The case has apparently settled.

think that I'd like some help in investing it, and, furthermore, can we figure out a way to put it in somebody else's name?" (L.R. ¶¶ 35-37).

Around this same time in February 2008, Ari befriended Justin Newman ("Newman"), who worked at a local Home Depot. (L.R. ¶ 19). Ari lured Newman through the pretext of offering Newman a construction job in Missouri with Ari's company. (L.R. ¶ 19). Ari successfully convinced Newman to meet at Ari's home with the promise of a construction job. (L.R. ¶ 19).

Newman arrived at Ari and Denise's house on February 23, 2008. (L.R. ¶ 20). Ari killed Newman and rolled Ari's pickup truck on top of Newman's unconscious body. (L.R. ¶ 22). The murder took place in Ari and Denise's garage. (L.R. ¶¶ 22-23).

After the murder, Ari staged things in the garage so that it appeared that his pickup truck slipped off a jack and crushed the body underneath it. (L.R. ¶ 22). Ari then lit the Squires' garage on fire and burned it, intending that Newman's body would be charred beyond recognition so that it would be mistaken for Ari's body when the body was discovered under the pickup. (L.R. ¶¶ 21-23). Denise, who was home at the time of the murder, called 911 to report the fire. (L.R. ¶21).

The authorities initially assumed that the dead body in the Squires' garage belonged to Ari. (L.R. ¶ 23). A critical component of the conspiracy, however, remained incomplete; to have the body discovered in the garage cremated as soon as possible. (L.R. ¶¶ 30, 48-49). Once the body was cremated, there would be no evidence left to reveal the true identity of the body. (L.R. ¶¶).

Denise repeatedly called Jim Ahlgrim, the director of the funeral home, and requested that "Ari's" body be cremated immediately, and Denise was angry that the body had not yet been

cremated. (L.R. ¶¶ 48-49). Meanwhile, Ari sent text messages from Newman's phone to Newman's mother to further attempt to give the false impression that Newman was out of town and in Missouri for a week. (L.R. ¶40).

Denise also furthered the conspiracy by pretending to mourn Ari's death. (L.R. ¶ 46). For instance, Denise hosted a dinner in "celebration" of her husband's life on February 29, 2008, at Maggiano's restaurant in Skokie. (L.R. ¶ 46). The dinner was attended by 120 people. (L.R. ¶ 46). During this time, and prior to and following this memorial dinner, Denise remained in contact with Ari by e-mail. (L.R. ¶¶ 41-46).

During e-mail exchanges with her supposedly "dead" husband, Ari asked Denise about how many people showed up at his memorial service and "when are you planning on disbursing my ashes," because the cremation of the body was critical to the conspiracy. (L.R. ¶¶ 41-46). Denise responded to the e-mails from Ari and told Ari that his "body" had not yet been released, and that she was "working on" a memorial party for him. (L.R. ¶¶ 41-46). When Ari sent Denise an e-mail asking her if she needed anything, Denise responded, "a new life." (L.R. ¶¶ 41-46). Later, Denise let Ari know that the memorial was attended by 120 people. (L.R. ¶¶ 41-46).

During the weeks following Ari's "death," the conspiracy began to quickly unravel. Denise was interviewed by the police and Newman's family became suspicious as to his whereabouts. (L.R. ¶ 27). When Newman's mother contacted police, police released an APB as to Newman's car, which was located in Eureka, Missouri. (L.R. ¶ 31). On March 2, 2008, when local police officers knocked on the door of the motel room Ari was staying in, Ari shot and killed himself in the motel room. (L.R. ¶ 33).

## ARGUMENT

1. **Shana Majmudar, a Secondary Beneficiary, Is Entitled to the Death Benefit Under the Policy Due to the Disqualification of the Primary Beneficiaries.**

    A.    **Any Rights The Newman Parties May Have To Insurance Proceeds Derives Entirely From Ms. Squire and Mr. Vaccaro.**

It is undisputed that the Newman Parties are not named beneficiaries of the FILI insurance policy. Rather, as described in the Lake County trial transcript and as the Newman Parties' counsel acknowledged in open court, their rights derive through purported assignments of insurance benefits from Ms. Squire and Mr. Vaccaro to the Newman Parties. Under Illinois law, "an assignment transfers to the assignee all the right, title or interest of the assignor in the thing assigned; thus the assignee stands in the shoes of the assignor ... The assignee can obtain no greater right or interest than that possessed by the assignor. *Apollo Real Estate Investment Fund, IV, L.P. v. Gelber*, 398 Ill.App.3d 773, 2009 WL 5206175 at *5 (1st Dist. Dec. 31, 2009) (citations omitted). *Accord Owens v. McDermott, Will & Emery*, 316 Ill.App.3d 340, 350, 736 N.E.2d 145, 155 (1st Dist. 2000). Therefore, if Denise is disqualified, as she should be, the Newman Parties as assignees of Denise likewise have no right or interest to her $4 million share of FILI policy proceeds as a matter of law.

    B.    **Illinois Public Policy Prohibits the Disbursement of any Proceeds to Squire Due to Her Undisputed Participation in a Failed Conspiracy to Collect the Same Life Insurance Proceeds at Issue in this Case.**

The Illinois Supreme Court has recognized a "long-established policy that one may not profit by an intentionally committed wrongful act." *State Farm Life Ins. Co. v. Smith*, 66 Ill.2d 591, 595, 363 N.E.2d 785, 786 (1977). While the courts have recognized that the term "public policy" lacks precise definition, courts have found that the public policy of this state is, at the very least, reflected in its constitution, its statutes and its judicial decisions. *O'Hara v. Ahlgren, Blumenfeld & Kempster*, 127 Ill.2d 233, 537 N.E.2d 730, 734 (1989).

8

Here, it is undisputed that Denise intentionally participated in a failed conspiracy to fraudulently obtain the same $4 million in life insurance proceeds at issue in this case. (L.R. ¶¶ 16-18, 20). Moreover, there is no dispute that this conspiracy of necessity required a murder, and that the unfortunate victim of Denise's conspiracy was Justin Newman. (L.R. ¶¶ 14, 20). The Newman Parties cannot now claim that because Denise's and Ari Squire's insurance fraud conspiracy was ultimately unsuccessful, her involvement in the illicit scheme can somehow be ignored. By itself, her participation in a conspiracy to fraudulently collect insurance proceeds by murdering another human being and faking her husband's death disqualifies Denise as a Policy beneficiary as a matter of Illinois public policy.

The strongest indicator of Illinois public policy is its statutes. *Marvin N. Benn & Associates Ltd. v. Newlsen Steel and Wire, Inc.*, 107 Ill.App.3d 442, 446, 437 N.E.2d 900, 902 (1st Dist. 1982). Illinois' public policy against insurance fraud is reflected in 720 ILCS 5/46-1(a). Subsection (a) of Section 5/46-1 creates the criminal offense of insurance fraud when a person attempts to obtain property from an insurance company by deception by making a false claim. To be convicted of conspiracy for violating this Act, the person must commit an overt act in furtherance of an agreement to commit insurance fraud. This requirement parallels the jury instruction in the Lake County trial by the Newman Parties in their action against Denise Squire, where the jury had to find that Justin Newman's death was part of the conspiracy to commit fraud against the insurance company and was caused by an "unlawful overt act performed by one or more of the parties to the agreement." (L.R. ¶ 17). The jury found by clear and convincing evidence that such an overt act took place. (L.R. ¶¶ 17-18). Certainly, the public policy of this state cannot condone rewarding a life insurance beneficiary by paying her policy proceeds after a

failed conspiracy to obtain by fraud and murder those very proceeds. Illinois public policy is clearly stated by the legislature's criminalization of such conduct.

Moreover, in determining whether a contract between parties is against public policy, Illinois law has gone even further than examining its constitution, statutes or judicial decision, and has expanded the definition of public policy to include whether it is "injurious to the interest of the public, is against good morals, or is at war with the interests of society." *In re Estate of Feinberg*, 235 Ill.2d 256, 265, 919 N.E.2d 888, 894 (200() (quoting *Vine St. Clinic v. HealthLink, Inc.*, 222 Ill.2d 276, 296 (2006)). Based upon this more expansive definition, is there any doubt that the conduct in question here by Denise violates Illinois public policy? .

Again, Denise's conduct, as found by the Lake County jury, includes her intentional participation in a conspiracy to defraud FILI, by using Justin Newman's charred body to fake the death of Ari Squire: "The Plaintiffs claim that they sustained damages as a result of a conspiracy between Defendant Denise Squire and Ari Squire to fake Ari Squire's death for financial gain." (L.R. ¶ 16). This is exactly what the Newman Estate argued in their closing argument before the Lake County jury:

> There was a scheme to fake a death for insurance money. That is exactly what happened.

(L.R. ¶ 20). *See also* L.R. ¶ 20:

> "And here the evidence was clear, and you should be convinced that there is liability, that Ari Squire did not do this acting alone, that it couldn't have been done acting alone, that Denise Squire participated in exchange for $4 million of insurance money."

Denise's participation in a conspiracy to defraud FILI is a clear violation of the Illinois public policy against insurance fraud, and disqualifies her as a beneficiary under the Policy.

Moreover:

It is a long standing public policy that 'no one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime.'

*BDO Siedman, LLP v. Harris*, 379 Ill.App.3d 918, 924, 885 N.E.2d 470, 475 (1st Dist. 2008) (quoting *Drexel, Burnham, Lambert Group, Inc. v. Vigilant Insurance Co.*, 595 N.Y.S.2d 999, 1010 (1993). While *BDO Siedman* was decided under New York Law, Illinois law is the same. *See Mother Earth Ltd. v. Strawberry Camel Ltd.*, 72 Ill.App.3d 37, 53, 390 N.E.2d 393, 406 (1st Dist. 1979) ("equity will not aid any person who has done iniquity or is seeking to take advantage of his own wrong"). Because Ms. Squire deliberately violated Illinois public policy by engaging in insurance fraud in connection with the very insurance Policy from which she now seeks to obtain benefits, she has forfeited her right to benefit from that wrongdoing. That the fraud, at least initially, was unsuccessful is irrelevant. *Mercantile Trust Co. v. N.Y. Underwriters Ins. Co.*, 376 F.2d 502, 505 (7th Cir. 1967).

### C. Ms. Squire Also Is Disqualified Under the Slayer Statute.

Further reflecting the public policy of Illinois, Illinois statutory law prohibits any individual from collecting the benefits under a life insurance policy where such individual "intentionally and unjustifiably causes the death of another." 755 ILCS 5/2-6 (West 2010). In particular, the Illinois "Slayer Statute" provides, in pertinent part:

A person who intentionally and unjustifiably causes the death of another shall not receive any property, benefit, or other interest by reason of the death, …

755 ILCS 5/2-6 (West 2010). The Slayer Statute is applicable to life insurance. *Prudential Ins. Co. of America v. Athmer*, 178 F.3d 473, 478 (7th Cir. 1999).

As the Newman Parties themselves recognized in their Petition to Intervene, the plain language of the Slayer Statute is broad and the express terms do not require that the person murdered be the insured. (Dkt. No. 10). Instead, it provides that a person causing the death of

11

another not receive any benefit "by reason of the death." 755 ILCS 5/2-6 (West 2010). Under Illinois law, "the word 'causes,' which is defined as 'anything producing an effect or result,' encompasses the actions of one participating in the intentional and unjustifiable death of another, whether as an aider and abettor, a co-conspirator, or one who hires another to kill the decedent." *In re Estate of Vallerius*, 259 Ill.App.3d 350, 354, 629 N.E.2d 1185, 1188 (5th Dist. 1994) (internal cites omitted). In stressing the broad application of the Slayer Statute, the *Vallerius* court added that:

> …the legislature certainly cannot be expected to prophesy and list in advance the infinite ways in which a statute such as this may need to be applied in the future. We will not read into the statute words of limitation that are not there, particularly [if such limitation] would be directly contrary to the strong public policy that murderers should be denied the fruits of their crimes.

629 N.E.2d at 1189. The *Vallerius* court also noted that a co-conspirator who participates in a conspiracy that causes a death is covered by the Slayer Statute. *Id.*

The Lake County jury found that Denise participated in a conspiracy which resulted in the death of Justin Newman. (L.R. ¶¶ 16-18). The murder of Justin Newman was essential to the scheme to fake Ari's death and to collect $4 million in life insurance benefits. (L.R. ¶¶ 16-18, 20). Accordingly, as previously acknowledged and argued by the Newman Parties, the plain language of the Slayer Statute prohibits Denise from receiving any benefit under the Policy.

### D.     Because Denise Squire Participated in a Conspiracy Which Foreseeably Caused the Death of the Insured, Denise Squire Is Disqualified from Collecting the Death Benefit Under the Policy.

Moreover, the insured's suicide was also a foreseeable consequence of the conspiracy. The conspiracy required Ari to flee and assume Justin Newman's identity. There was a reasonable chance that police could track Mr. Squire down, especially if DNA testing showed that the charred body at the Squire residence was not that of Mr. Squire. Hence Denise's

unsuccessful rush to have the body found at the residence cremated. (*See* L.R. ¶¶ 30, 48-49: "The attempts to cremate the body as soon as possible – she's the one bugging the funeral director. 'We've got to get this thing cremated.'"). Denise knew Ari was on the run as she communicated with him by e-mail. (L.R. ¶¶ 40-46). As law enforcement closed in and knocked on Ari's motel door, Ari committed suicide in a further effort to conceal the conspiracy. (L.R. ¶ 33). Ari had a gun with him when he fled and must have known that his "second" death would result in Denise's receipt of benefits. Given Mr. Squire's murder of Justin Newman as well as his other legal and financial troubles, suicide was a foreseeable circumstance. Denise intentionally joined in the conspiracy to fraudulently obtain $4 million from FILI, a foreseeable consequence of which involved her husband's suicide. *See People v. Hickman*, 59 Ill.2d 89, 319 N.E.2d 511 (1979). For this reason too she should be disqualified from receiving benefits under the Policy.

This situation is analogous to a felony murder situation where one who commits a felony during which a person is killed is guilty of murder, even if the felon does not directly cause the death. For example, in *People v. Hickman*, 59 Ill.2d 89, 319 N.E.2d 511 (1974), the defendant burglar was convicted of felony murder where his burglary increased the probability that one police officer would shoot another by accident. As the Seventh Circuit has explained, "'cause' in law means not just but-for cause but also an enhancement of the likelihood (what in the law is often called 'foreseeability') that the class of events would occur." *Brackett v. Peters*, 11 F.3d 78, 82 (7th Cir. 1993). Here, Denise participated in a murder/insurance fraud conspiracy that included the insured's flight and use of the victim's identity. Denise's agreement to and participation in this scheme certainly enhanced the possibility that the insured, Ari, would take his own life if apprehended, just as Hickman's participation in a burglary increased the

probability that one police officer would shoot another. Thus, Denise not only caused the victim's death, her participation in the conspiracy was, in law, a cause of Ari's death.

## CONCLUSION

For all the above reasons, this Court should grant Shana Majmudar's Motion for Summary Judgment as to Count I of her Counterclaim and as to Count III of FILI's Complaint, declaring that Denise Squire is disqualified as a beneficiary under the policy, enter judgment in favor of Shana Majmudar and against FILI, Denise Squire, and the Newman Parties in the amount of $4 million, plus pre-and post judgment thereon and grant such other and further relief as the Court deems just.

Dated: October 20, 2010

Respectfully submitted,

Shana Majmudar

By: _____ /s/Cary E. Donham _____
One of Her Attorneys

J. Timothy Eaton (#0707341)
Cary E. Donham (#6199385)
Barton J. O'Brien (#6276718)
Shefsky & Froelich Ltd.
111 E. Wacker Drive, Suite 2800
Chicago, Illinois 60601
312.527.4000

1165016_2

14