IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FIDELITY INVESTMENTS LIFE<br>INSURANCE COMPANY<br><br>   Plaintiff,<br><br>   vs.<br><br>DENISE SQUIRE, THE ESTATE OF JUSTIN<br>M. NEWMAN, by and through his mother,<br>DONNA FIORITO, on her own behalf and as<br>administrator of his estate, FRANK TESTA, III,<br>SHANA MAJMUDAR, and JOE VACCARO<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 09 cv 02704<br><br>Judge Der-Yeghiayan |

### SHANA MAJMUDAR'S LOCAL RULE 56.1
### STATEMENT OF UNDISPUTED MATERIAL FACTS

Shana Majmudar ("Majmudar") hereby submits pursuant to Local Rule 56.1 her Statement of Undisputed Material Facts in support of her Motion for Summary Judgment:

### PARTIES

1. Fidelity Investments Life Insurance Company ("FILI") is an insurance company organized under the laws of the State of Utah, with its principal place of business in Boston Massachusetts. (FILI's First Amended Complaint ("FILI Complaint"), ¶4, Docket No. 77).

2. Denise Squire ("Squire") is an individual and a citizen of the State of Illinois. Squire is a resident of Lake Barrington, Illinois. (Squire's Answer to the FILI Complaint ("Squire Answer"), ¶5, Docket No. 92).

3. Majmudar is an individual and citizen of the State of Illinois. Majmudar is a resident of Fox Grove, Illinois. (Majmudar's Answer, Affirmative Defenses, and Counterclaim to the FILI Complaint, ¶6, Docket No. 87).

4. Joe Vaccaro ("Vaccaro") is an individual and citizen of the State of California. Vaccaro is a resident of Santa Barbara, California. (Vaccaro's Answer and Counterclaim to FILI's Complaint, ¶7, Docket No. 91).

5. Donna FioRito ("FioRito") is an individual and citizen of the State of Illinois. FioRito was at all relevant times a resident of Arlington Heights, Illinois. (Estate of Newman, FioRito, and Frank Testa's Answer, Affirmative Defense, and Counterclaim to FILI Complaint ("Newman Defendant Answer"), ¶8, Docket No. 90).

6. FioRito is also sued in her capacity as administrator of the Estate of Justin Newman ("Estate of Newman"). (FILI Complaint, ¶9).

7. Frank Testa ("Testa") is an individual and citizen of the State of Illinois. Testa was at all relevant times a resident of Arlington Heights, Illinois. (Newman Defendants Answer, ¶10).

## JURISDICTION AND VENUE

8. This Court has jurisdiction in that this action meets the diversity requirement and amount in controversy requirements of 28 U.S.C. §1332 and the Court has jurisdiction to consider claims brought under the Declaratory Judgment Act, 28 U.S.C. §2201. Plaintiff and each Defendant are of diverse citizenship and the amount in controversy exceeds $75,000. (FILI Complaint, ¶11).

2

9. In addition, this Court has jurisdiction over claims asserted under the Declaratory Judgment Act, 28 U.S.C. § 2201 pursuant to this Court's supplemental jurisdiction under 28 U.S.C. § 1367(a). Section 1367(a) provides that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Accordingly, a federal district court has jurisdiction over all other claims, in addition to the federal interpleader claims asserted, "that derive from a common nucleus of operative fact." See, Groce v. Eli Lilly & Co., 193 F.3d 496 (7th Cir. 1999). Here, the common nucleus of operative fact is the alleged conspiracy to defraud FILI. The alleged conspiracy is the factual basis for the competing claims at issue in the federal interpleader action as well as the dispute over FILI's obligation to pay benefits under the Policy which is the subject of Plaintiff's breach of contract and bad faith claims, FILI's declaratory judgment claim, and Shana Majmudar's ("Ms. Majmudar") counterclaim for breach of contract against FILI. The claims are so related that they form part of the same case or controversy and jurisdiction is therefore proper under Section 1367(a). (FILI Complaint, ¶14); (Majmudar's Answer, Affirmative Defenses, and Counterclaim to the FILI Complaint, ¶¶6-23).

# UNDISPUTED MATERIAL FACTS[1]

*The Policy*

10. FILI issued a life insurance policy, Policy No. TL000-5560, insuring the life of Ari Squire ("Ari"), and incepting on August 12, 1999 (the "Policy"). (Exhibit A - Policy); (FILI Complaint, ¶16).

11. The Policy provided term life insurance coverage and provides a "Face Amount" or death benefit of $5 million ($5,000,000) in the event of Ari's death. (Exhibit A – Policy, p. 3); (FILI Complaint, ¶17); (FILI's Answer to Majmudar's Counterclaim, ¶7, Docket No. 115).

12. The Policy, by "Beneficiary Change Form" dated December 20, 2006, designates Denise, Ari's wife, as a "Primary Beneficiary" to receive 80% of the Face Amount or $4 million ($4,000,000) upon Ari's death. Vaccaro is designated a "Primary Beneficiary" to receive 20% of the Face Amount or $1 million ($1,000,000) upon Ari's death. Majmudar is designated the "Secondary Beneficiary" under the Policy as to 100% of the $5 million Face Amount. (FILI Complaint, ¶18); (Exhibit A – Policy).

13. On March 2, 2008, Ari died from a self-inflicted gun shot wound. (Exhibit B – Certificate of Death). Ari was married to Denise. (Exhibit C - Report of Proceedings, Lake County Trial (Transcript), Feb. 24, 2010 at 9:45 a.m., p. 108, lines 2-9, Testimony of Denise Squire).

---

[1] Copies of the referenced exhibits are contained in the Appendix of Exhibits in Support of Shana Majmudar's Motion for Summary Judgment and Local Rule 56.1 Statement of Undisputed Material Facts ("Appendix").

***The Conspiracy to Commit Insurance Fraud***

14. Prior to Ari's death, Ari murdered Justin Newman ("Newman"). (Exhibit C - Transcript, Feb. 25, 2010 at 9:45 a.m., p. 40, lines 3-9, Closing Argument – Jon Loevy).

15. Following Newman's murder, the Estate of Newman, by and through FioRito, individually, and as administrator of the Estate of Newman, and Testa (collectively, the "Newman Parties") filed a lawsuit against Denise and the Estate of Ari Squire in the Circuit Court of Cook County, Illinois (the "Newman Litigation"). The Newman Litigation was then transferred to the Circuit Court of the 19th Judicial Circuit, Lake County, Illinois and assigned Case No. 08 L 676. (Newman Defendants' Answer, ¶23); (Exhibit D - Second Amended Complaint, Newman Litigation). The trial of the Newman Litigation commenced on February 22, 2010, and continued to February 25, 2010 (the "Lake County Trial").

16. The Newman Litigation proceeded to trial against Denise on one count of the Newman Parties' complaint. As described in the jury instructions, the [Newman Parties] claimed that they sustained damages as a result of a conspiracy between Denise and Ari to fake Ari's death for financial gain. (Exhibit E - Jury Instruction No. 7, Lake County Trial).

17. During the Lake County Trial, the Newman Parties had the burden of proving the following propositions by clear and convincing evidence: First, the [Denise] and [Ari] reached an agreement; Second, that the agreement was to participate in an unlawful act; Third, that Justin Newman's death was caused by an unlawful overt act performed by one or more of the parties to the agreement; and Fourth, that the overt act was done pursuant to and in furtherance of the agreement. (Exhibit E - Jury Instruction 8b, Lake County Trial).

5

18. On February 25, 2010, a jury rendered a verdict against Denise and awarded damages of $6 million in favor of FioRito and Testa. (Exhibit F - Verdict Form A, Lake County Trial).

19. Prior to his death, Newman worked at Home Depot. Newman planned to meet Ari on February 23, 2008, about job opportunity working in the construction industry for Ari. (Exhibit C - Transcript, Feb. 22, 2010, p. 98, 99, lines 15-19, 1-21, Testimony of Frank Testa).

20. On February 23, 2008, Justin Newman was killed as part of a scheme to fake a death for insurance money. This was a scheme to fake a death for insurance money. This was a scheme to get insurance money by faking a death. (Exhibit C - Transcript, Feb. 25, 2010 at 9:45 a.m., p. 8-9, lines 14-21, lines 3-4, Closing Argument – Jon Loevy). The death here was the result of an attempt to get insurance money. (Exhibit C - Transcript, Feb. 25, 2010 at 9:45 a.m., p. 40, lines 21-22, Closing Argument – Jon Loevy). "And here the evidence was clear, and you should be convinced that there is liability, that Ari Squire did not do this acting alone, that it couldn't have been done acting alone, that Denise Squire participated in exchange for $4 million of insurance money." (Exhibit C- Transcript, Feb. 25, 2010 at 9:45 a.m., p. 42, lines 3-8).

21. During the morning of February 23, 2008, Scott Morrison, a detective with the Lake County Sheriff's office, responded to a death investigation at the Squire residence. (Exhibit C - Transcript, Feb. 22, 2010, p. 6, lines 8-12, Testimony of Scott Morrison). Denise had called 911 to report a fire in her garage. (Exhibit C- Transcript, Feb 24, 2010, at 9:45 a.m., p.117, lines 4-15, Testimony of Denise Squire).

22. The body was found underneath a truck in the garage of the Squire residence. The body was very badly burned. (Exhibit C - Transcript, Feb. 22, 2010, p. 7, lines 7-20, Testimony of Scott Morrison).

23. During Scott Morrison's investigation on February 23, 2008, he interviewed Denise for approximately 45 minutes. (Exhibit C - Transcript, Feb. 22, 2010, p. 10, lines 11-17, Testimony of Scott Morrison). After speaking with Denise, Scott Morrison and other offices with the Lake County Sheriff's office believed that the body in the Squire's garage belonged to Ari. The body was very badly burned, so a facial recognition could not be done on the morning of February 23, 2008. (Exhibit C - Transcript, Feb. 22, 2010, p. 8, lines 11-17, Testimony of Scott Morrison).

24. Denise had informed the Lake County Sheriff's office, including Scott Morrison, that she could not contact or get a hold of her husband, Ari. Denise stated that she had tried multiple times to call him. (Exhibit C - Transcript, Feb. 22, 2010, p.8, lines 11-15, Testimony of Scott Morrison).

25. At the time of his interview with Denise of February 23, 2008, Scott Morrison fully believed that the body in the Squire's garage belong to Ari. (Exhibit C - Transcript, Feb. 22, 2010, p. 13, lines 5-16, Testimony of Scott Morrison).

26. On the afternoon of February 23, 2008, Scott Morrison briefly talked with Jim McCulla, Ari's business partner in Main Beam Construction. (Exhibit C - Transcript, Feb. 22, 2010, Testimony of Scott Morrison, p. 17, lines 15-23).

27. On February 25, 2008, Jim McCulla informed Scott Morrison that Jim McCulla was receiving phone calls from FioRito regarding Newman. FioRito was looking for Newman and Newman had been just hired by Main Beam Construction. (Exhibit C - Transcript, Feb. 22, 2010, p. 18, lines 7-24, Testimony of Scott Morrison).

28. Jim McCulla also told Scott Morrison about a conversation that he had with Ari a couple of years prior to 2008. Ari told McCulla that Ari wanted to start his life over. Ari would like to find a dead body someplace and burn up that dead body and then take that dead body's identification and start his life over. (Exhibit C - Transcript, Feb. 22, 2010, p. 19, lines 14-18, Testimony of Scott Morrison).

29. Scott Morrison then compared the information on Newman's driver's license and Ari's driver's license and saw that the physical features were similar. (Exhibit C - Transcript, Feb. 22, 2010, p. 20, lines 6-13, Testimony of Scott Morrison).

30. Denise asked Scott Morrison why it was taking so long to release the body from the coroner's office. Denise wanted the body released so that it could be cremated. (Exhibit C - Transcript. Feb. 22, 2010, p. 25, lines 1-5, Testimony of Scott Morrison).

31. On March 2, 2008, Scott Morrison received a call from a police officer in Missouri with the Eureka Police Department, Officer Bob Watson. Officer Watson was running license plates at a Days Inn in Eureka, Missouri. Officer Watson ran the license plate of the red Pontiac that Newman was believed to be driving. (Exhibit C - Transcript, Feb. 22, 2010, p. 30, lines 3-22, Testimony of Scott Morrison).

32. As of March 2, 2008, the Lake County Sheriff's office, including Scott Morrison were still treating the investigation as the body in the Squire garage belong to Ari and that Newman was in Eureka, Missouri. (Exhibit C - Transcript, Feb. 22, 2010, p. 31, lines 19-22, Testimony of Scott Morrison).

33. Scott Morrison traveled to Missouri on the morning of March 2, 2008. Officers in Missouri had tried to make contact with the person they believed was Newman in the hotel room. When they knocked on the door, and after opening the door with the manager's key, the officers heard a single gunshot. Ari killed himself. (Exhibit C - Transcript, Feb. 22, 2010, pp. 31-32, lines 23-24, lines 1-11, Testimony of Scott Morrison).

34. On March 2, 2008, Scott Morrison realized that Ari had not died in the Squire's garage. (Exhibit C - Transcript, Feb. 22, 2010, p. 32, lines 18-20, Testimony of Scott Morrison).

35. A week before Ari faked his death, Denise called Jim Murphy, a financial advisor she has not talked to in years. Denise informed Jim Murphy that she was expecting to come into some money, and suggested that she needed help investing it. Denise further inquired whether there was a way to put the money in somebody else's name? (Exhibit C - Transcript, Feb. 25, 2010, at 9:45 a.m., pp. 9-10, lines 22-24, 1-6, Closing Argument – Jon Loevy).

36. Denise gave Jim Murphy the excuse that she wanted to keep the money away from Ari. Denise told Jim Murphy that her father had just died and that she was in the process of selling her father's house. Denise lied, however, as her father had died in 2006 and she sold the house that same year. (Exhibit C - Transcript, Feb. 25, 2010, at 9:45 a.m., p. 10, lines 7-18, Closing Argument – Jon Loevy); (Exhibit C - Transcript, Feb. 23, 2010, at 9:30am, pp. 8-9, lines 23-24, lines 1-21, Testimony of Jim Murphy).

9

37. Jim Murphy met Denise on one occasion maybe 5 or 6 years prior to her call. Denise called Jim Murphy during the week proceeding Justine Newman's murder. Justin Newman was killed on February 23, 2008. (Exhibit C - Transcript, Feb. 23, 2010, at 9:30 a.m., p. 8, lines, 2-9, Testimony of Jim Murphy).

38. Denise also contacted her friend, Nikki Phillips, a realtor in Florida. Nikki Phillips testified that during her conversation with Denise, Denise became agitated and told Nikki Phillips that Ari was not dead. Denise then back-pedaled and said that Ari was not legally dead. (Transcript, Feb. 25, 2010, at 9:45 a.m., p. 10-11, lines 19-24, 1-5, Closing Argument – Jon Loevy).

39. The body in the Squire's garage was not Ari; it was Justin Newman. (Transcript, Feb. 22, 2010, p. 104, lines 22-23, Testimony of Frank Testa).

40. Ari faked his death. (Transcript, Feb. 22, 2010, p. 126, lines 12-14, Testimony of Denise Squire). Ari sent out text messages from Newman's phone to Newman's mother to give the false impression that Newman was out of town and in Missouri for a week. (Transcript, Feb. 24, 2010 at 9:45 p.m., p. 33, lines 8-24, Testimony of Donna FioRito).

41. On February 24, 2008, Denise received an e-mail from Ari. Denise did not respond to the e-mail from Ari and did not tell the police about Ari's e-mail. (Transcript, Feb. 23, 2010, at 9:30 a.m., pp. 72-73, lines 24, 2-9, Testimony of Denise Squire).

42. On February 25, 2008, Denise received another e-mail from Ari. (Transcript, Feb. 23, 2010, at 9:30 a.m., p. 73, lines 10-12, Testimony of Denise Squire). The February 25 e-mail asked Denise a series of questions: It asked Denise when the party was set for. It asked

10

Denise when the ashes will be returned to her. It asked Denise if there is anything that she needs. It asked Denise if an "accident" happened. At the time of the e-mails, Ari was believed to be dead. (Transcript, Feb. 23, 2010, at 9:30 a.m., pp. 73-74, lines 10-24, 1-8, Testimony of Denise Squire).

43. Denise answered Ari's February 25 e-mail. In response to the question – "When is the party set for?" – Denise answered that she was "working on that now" and understood that the question referred to the memorial dinner she was planning. In response to the question – "When will my ashes be returned to you?" – Denise responded that "the body has not been released." In response to the question – "Is there anything you need? - Denise answered "A new life." Denise responded to this e-mail again a couple of days later after the memorial dinner for Ari. (Transcript, Feb. 23, 2010, at 9:30 a.m., pp. 75-76, lines 1-24, 1-14, Testimony of Denise Squire).

44. During the February 25 e-mail exchange, Denise testified at the Lake County Trial that she did not know that she was communicating with Ari. She testified that see thought she was talking to a computer and that the e-mails were automated. (Transcript, Feb. 23, 2010, at 9:30 a.m., pp. 75-76, lines 22-24, line 1, Testimony of Denise Squire). Denise explained that she was not corresponding with her dead husband. Denise thought that the e-mails were automated e-mails, and it was not her perception that he was alive, typing a message. (Transcript, Feb. 23, 2010, at 9:30 a.m., pp. 82, lines 5-17, Testimony of Denise Squire).

45. Denise did not initially mention that e-mails to the police. (Transcript, Feb. 23, 2010, at 9:30 a.m., pp. 76-77, lines 15-24, lines 1-24, Testimony of Denise Squire).

11

46. Denise held a celebration of life dinner party as Ari's memorial. Denise sent Ari an e-mail that stated: "The party was at Maggiano's Restaurant in Skokie on Thursday at 6:00 to 9:00. 120 people attended." (Transcript, Feb. 23, 2010, at 9:30 a.m., p. 81, lines 12-20, Testimony of Denise Squire). Denise did not tell the police that she sent this e-mail. (Transcript, Feb. 23, 2010, at 9:30 a.m., p. 82, lines 3-4, Testimony of Denise Squire).

47. Denise did not tell the Lake County Sheriff's office about Ari's e-mails until an interview on March 3, 2008. After Detective Harris told Denise that the Lake County Sheriff's office had her computers or were going to get them, Denise told Detective Harris that she had been corresponding with Ari by e-mail. (Transcript, Feb. 23, 2010, at 9:30 a.m., pp. 131-132, lines 6-24, lines 1-8, Testimony of Denise Squire,).

48. Denise met with James Ahlgrin, a funeral director, on February 24, 2008. (Transcript, Feb. 23, 2010, at 2:00 p.m., pp. 87, 89, lines 16-18, lines 7-13, Testimony of James Ahlgrin). During the meeting, Denise said that she wanted the body cremated. (Transcript, Feb. 23, 2010, at 2:00 p.m., p. 90, lines 7-10, Testimony of James Ahlgrin).

49. Denise became frustrated and upset that the funeral home had not cremated the body immediately. (Transcript, Feb. 23, 2010, at 2:00 p.m., p. 90-91, lines 20-24, lines 1-24, Testimony of James Ahlgrin).

DATED: October 20, 2010                     Respectfully submitted,

                                            **SHANA MAJMUDAR**

                                            By: /s/Cary E. Donham
                                                    One of Her attorneys

J. Timothy Eaton, Esq. (#0707341)
Barton J. O'Brien, Esq. (#6276718)
Shefsky & Froelich Ltd.
111 E. Wacker Drive, Suite 2800
Chicago, Illinois 60601
312.527.4000
Firm I.D. No. 29143
teaton@shefksylaw.com
bobrien@shefskylaw.com
1164936_1